IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LORRAINE M. DURST, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 19-2101 |
| | : | |
| ANDREW SAUL,[1] | : | |
| Commissioner of Social Security, | : | |
| Defendant. | : | |
| | : | |

**<u>MEMORANDUM OPINION</u>**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                    September 11, 2020

This action was brought pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final

decision of the Commissioner of the Social Security Administration (the "Commissioner"), which

denied the application of Lorraine M. Durst ("Plaintiff" or "Durst") for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 301, *et seq.* (the "Act").

Presently before the Court is "Plaintiff's Brief and Statement of Issues in Support of Request for

Judicial Review" ("Pl. Br.") (Doc. 16) and "Defendant's Response to Request for Review of

Plaintiff" ("Def. Br.") (Doc. 17), and "Plaintiff's Reply Brief" (Doc. 20), together with the record

of the proceedings before the Administrative Law Judge ("ALJ") (Doc. 11).  Plaintiff "seeks

reversal of the adverse portion of the final decision of Defendant Commissioner denying Plaintiff's

application for Supplemental Security Income benefits ("SSI")." (Pl. Br. at 1).  The Commissioner

---

[1] Andrew Saul became the Acting Commissioner of Social Security on June 17, 2019. Pursuant to
Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Saul should be substituted for the former
Acting Commissioner, Nancy A. Berryhill, as the defendant in this action. No further action need
be taken to continue this suit pursuant to section 205(g) of the Social Security Act. 42 U.S.C. §
405(g).

seeks the entry of an order affirming the decision of the ALJ. (Def. Br. at 2). For the reasons set

out below, we will deny Plaintiff's request for review and affirm the decision of the ALJ.

## I.    FACTUAL AND PROCEDURAL HISTORY

This matter is the second civil action that Durst has brought in this Court relating to her

application for SSI. The current appeal arises from the ALJ's March 15, 2019 decision, finding

that prior to March 11, 2019 Durst was "not disabled" and following that date is "disabled." (R.

1919, Finding No. 11). We now describe Durst's application for benefits and the history of her

administrative and district court processes.

### A.  Factual History

We set out pertinent facts and information from the record in our Report and

Recommendation on this case previously, which was approved and adopted:[2]

> Durst protectively filed the application giving rise to this
> litigation on December 5, 2012. (R. 417.) She was 48 years old.
> (*Id.*) She was educated to the eighth grade and had limited previous
> work as a housekeeper. (R. 422.) She had a history of prostitution
> and drug and alcohol abuse. (R. 37-38, 45-46.) In January 2014,
> she became a participant in the Project Dawn Court, a diversionary
> program of the Philadelphia Municipal Court for women who had
> multiple prostitution arrests. (R. 1886.) In March 2014, she violated
> the terms of her probation, but then got sober before spending a few
> weeks at a rehabilitation center and then at Fresh Start, a home for
> women recovering from drug and alcohol abuse. (R. 36, 1862, 1883,
> 1886-87.) As of the date of her hearing in November 2014, she was
> living with her sister and her sister's grandsons. (R. 35.) She has
> asserted an onset date of March 7, 2014. (R. 34.)[3]

---

[2] The forthcoming footnotes are from the original, as they are part of the quoted Report and
Recommendation.

[3] In her original benefits application, she asserted an onset date of July 31, 2006. (R. 417.) During
the hearing, she amended this date to March 7, 2014, to reflect the last date she abused alcohol or
used drugs. (R. 33-34.)

In a disability report filed with her application, she reported that her ability to work was limited by her chronic hepatitis C,[4] anxiety, depression, stress disorder, and osteomyelitis. (R. 421.)[5] She also has a diagnosis of HIV positive, which her care providers assessed as AIDS. (R. 40-41, 1671-1752, 1847-82.)[6] There are also records pertaining to lumbar pain, a history of osteomyelitis,[7] and knee pain. (R. 49-51, 1570.)

In 2003, 2008, and 2011, Durst had three prior hearings before three different ALJs for previous separate social security applications. (R. 12.)[8] Each of these resulted in an unfavorable decision. (*Id.*) A review of the decisions from these claims shows that, at least as far back as 2008, Durst asserted that her ability to work was limited by lumbar spine impairments, hepatitis C, anxiety, and depression. (R. 92.)

[In] Dr. Haresh Punjabi's February 2013 consultative examination, . . . he evaluated Durst's "ability to perform work-related physical activities." (R. 1560-71.) He opined that in an eight hour day, she could stand and walk for one hour or less, sit for four hours, and was limited in pushing and pulling with her lower extremity. (R. 1560.) He attributed these limitations to "vague lower back pain." (*Id.*) He examined the range of motion in her

---

[4] We understand that chronic hepatitis C infections may be asymptomatic for certain individuals at different time periods, but we also understand that by June 2014 Durst began showing symptoms of the disease. On June 13, 2014, nurse practitioner Grace Paik recommended that she begin treatment after a liver scan showed infection. (R. 1742.)

[5] This Function Report is undated but it followed a field office report on the application that is the subject of this litigation. Based upon its proximity to pertinent documents, we assume this was filed with her December 2012 application.

[6] AIDS (acquired immunodeficiency syndrome) is the last stage of an HIV infection. *What are HIV and AIDS?*, HIV.GOV https://www.hiv.gov/hiv-basics/overview/about-hiv-and-aids/what-are-hiv-and-aids (last visited March 12, 2018). AIDS is "the stage of HIV infection that occurs when your immune system is badly damaged and you become vulnerable to opportunistic infections. When the number of your CD4 cells falls below 200 cells per cubic millimeter of blood…, you are considered to have progressed to AIDS." (*Id.*)

[7] Osteomyelitis is "an infection in a bone. Infections can reach a bone by traveling through the bloodstream or spreading from nearby tissue. Infections can also begin in the bone itself if an injury exposes the bone to germs…. Most people require surgery to remove parts of the bone that have died—followed by strong antibiotics, often delivered intravenously, typically for at least four to six weeks. *Osteomyelitis*, MAYO CLINIC https://www.mayoclinic.org/diseases-conditions/osteomyelitis/symptoms-causes/syc-20375913 (last visited March 19, 2018.)

[8] She also appears to have filed a claim in 2005, but that claim was dismissed by an ALJ "due to abandonment of her claim, as she did not appear at the hearing." (R. 12.)

joints, spine, and limbs, and performed a physical evaluation, ultimately assessing that she has "possible DJD [degenerative joint disease], lumbosacral area, also has history of osteomyelitis in that area even though she is not very clear… hepatitis C in remission with no symptoms [and] severe anxiety, depression and posttraumatic stress disorder." (R. 1562-70.)

As the record before us indicates, Durst had been seeing a therapist at Comhar, Inc.[9] since 2007. (R. 1824.) She saw the therapist, Kandie Witherspoon, weekly, and a nurse practitioner, Christina Kusher, who managed her medications, monthly. (R. 41-42.) She discussed her anger, anxiety, and sleeping issues with Witherspoon. (R. 1800-09.) The therapy also addressed Durst's need for sobriety and the loss of two of her children—one from sudden infant death syndrome and one from an overdose—and a niece, who also overdosed. (R. 37, 1597, 1602.)

Durst was diagnosed with HIV on March 21, 2014 while at county prison. (R. 1683.) She began treatment with the Jonathan Lax Center on March 31, 2014 with Grace Paik, a nurse practitioner. (R. 1683-88.) Her first blood test showed a CD4 count[10] of 156. (R. 1689-91.) She began taking antiretroviral medication, and remained on it through at least October 2014, the most recent treatment record from the Lax Center. (1707, 1866.)

Durst began treatment at the Wedge Medical Center in July 2014 upon a referral from her probation officer "for her cocaine and alcohol dependence after an arrest for prostitution." (R. 1841.) The physician who conducted her intake recommended that she continue seeing her Comhar therapist and taking her medication, and that she participate in an intensive outpatient program at Wedge. (*Id.*) She did so, and at the time of the hearing was attending three-hour intensive outpatient group therapy sessions three days a week as well as weekly individual therapy sessions at Wedge. (R. 42-44.) This treatment was focused largely on drug rehabilitation. (*Id.*)

---

[9] Comhar is a "comprehensive human services organization… [that] implement[s] community centers, community living arrangements, co-occurring behavioral health and addiction programs, services for the Latino community, services supporting individuals with HIV/AIDs, and children and family services… in the Philadelphia, Montgomery and Northampton County communities." *COMHAR History*, COMHAR, INC. https://www.comhar.org/about (last visited March 19, 2018).

[10] "The CD4 count is like a snapshot of how well your immune system is functioning. CD4 cells (also known as CD4+ T cells) are white blood cells that fight infection. The more you have, the better. These are the cells that the HIV virus kills. As HIV infection progresses, the number of these cells declines. When the CD4 count drops below 200 due to advanced HIV disease, a person is diagnosed with AIDS. A normal range for CD4 cells is about 500-1,500. Usually, the CD4 cell count increases as the HIV virus is controlled with effective HIV treatment." *CD4 Count (or T-cell count), HIV/AIDS,* U.S. DEPARTMENT OF VETERANS AFFAIRS https://www.hiv.va.gov/patient/diagnosis/labs-CD4-count.asp (last visited March 9, 2018).

As part of her participation in the Project Dawn Court, Durst was also referred to the Joseph J. Peters Institute, a social service agency that specializes in treating sexual abuse. (R. 1883.) A Peters physician conducted a psychological evaluation in July 2014, and diagnosed her with depressive disorder, posttraumatic stress disorder from previous sexual abuses, cocaine dependence, alcohol abuse, and opioid abuse. (R. 1883-92.) She then began seeing a therapist at Peters twice a week. (R. 45.)

(R. 2019–22) (footnotes in original).

## B. First Hearing

Durst first applied for SSI on December 5, 2012. (R. 377). Her application was denied, and she filed a request for a hearing before an ALJ. (R. 215–17). The hearing was held on November 10, 2014. (R. 29). In a decision issued on January 23, 2015, the ALJ, Janice C. Volkman, found that Plaintiff was not disabled. (R. 9). She requested review by the Appeals Counsel. The Appeals Counsel denied her request for review, making the ALJ's decision the final decision of the Commissioner. Durst then filed a civil action in federal court pursuant to 42 U.S.C. §405(g). The case was assigned to Judge McHugh and referred to us for Report and Recommendation. On April 16, 2018, Judge McHugh approved and adopted the Report and Recommendation, ordering that the ALJ's decision be vacated, and the matter be remanded for further administrative proceedings. (R. 2017). On June 26, 2018, the Appeals Counsel issued an order for remand. (R. 2040).

## C. Second and Third Hearings

There were two hearings held on remand before ALJ Kathleen McDade, on September 26, 2018 and January 23, 2019. (R. 1928, 1955). At both hearings Durst testified and was represented by counsel. In addition, at the January 23, 2019 hearing a vocational expert ("VE") testified as well. (R. 1956). At the January hearing, Durst "amended her alleged onset date of disability to June 1, 2014." (R. 1902).

5

## II.    STANDARD OF REVIEW

This Court must determine whether substantial evidence supports the Commissioner's decision. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford*, 399 F.3d at 552. The factual findings of the Commissioner must be accepted as conclusive, provided they are supported by substantial evidence. *Richardson*, 402 U.S. at 390 (citing 42 U.S.C. § 405(g)); *Rutherford*, 399 F.3d at 552. The review of legal questions presented by the Commissioner's decision, however, is plenary. *Shaudeck v. Commissioner of Social Security Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

## III.    DECISION UNDER REVIEW

In her review on remand, the ALJ had to determine whether Durst was disabled within the meaning of the Act at any time following the alleged onset date of June 1, 2014.  Utilizing the five-step sequential evaluation process set forth in 20 C.F.R. § 416.920(a), the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since the date of application." (R. 1904, Finding No. 1).  At Step Two, she found that since June 1, 2014 Plaintiff "has had the following severe impairments: Depressive and Anxiety Disorders and PTSD."  (R. 1904, Finding No. 2).  At Step Three, she found that Durst "has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Par 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.929)."  (R. 1906, Finding No. 3).

She then assessed Plaintiff's Residual Functional Capacity ("RFC"), which is defined as "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).  She made the following finding:

> **4. After careful consideration of the entire record, the undersigned finds that since the amended alleged onset date of disability, June 1, 2014, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the work should involve simple routine work, simple judgment and decision making; occasional contact with the public, occasional interaction with coworkers and supervisors; she can occasionally stoop, crouch, kneel, crawl, balance, and climb ramps and stairs but cannot climb ladders, ropes, or scaffolds; the work should involve few workplace changes such that the same duties can be performed at the same station or location from day to day; and, should be goal, rather than production, oriented meaning any production criteria can be made up by the end of the workday or shift.**

(R. 1908–07, Finding No. 4).  The ALJ then determined at Step Four that Durst "has no past relevant work." (R. 1918, Finding No. 5).  At Step Five, she determined that "[p]rior to March 11, 2019, the date of adjudication, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (R. 1918, Finding No. 9).  The ALJ pointed to the testimony of the VE, who stated that Durst would have been able to perform that jobs of "Bench assembler," "Touch Up Painter by Hand," and "Inspector/ Hand Packager Plastic Products." (R. 1919).  The ALJ further found that "[b]eginning on March 11, 2019, the date of adjudication, the claimant's age category changed upon non-mechanical application[11] of the Medical-Vocational

---

[11] This non-mechanical application is described in 20 CFR § 416.963: "We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case."  Plaintiff's date of birth is June 2, 1964, which made her 54 years, 9 months, and 10 days old on the date of the ALJ's March 11,

Guidelines . . . there are no jobs that exist in significant numbers in the national economy that the claimant could perform."  (R. 1919, Finding No. 10).  Thus, before March 11, 2019 the ALJ made a finding of "not disabled" and following that date made a finding of "disabled."  (R. 1919, Finding No. 11).

## IV.    DISCUSSION

Plaintiff asserts four grounds in support of her request for remand.  First, she argues that the ALJ erred in finding her HIV/AIDS to be a non-severe impairment at Step Two.  (Pl. Br. at 4).  She then asserts that the ALJ erred in awarding "little weight" to Nurse Practitioner Grace Paik's opinion.  (*Id.* at 14).  She next claims that the ALJ erred in awarding "little weight" to an opinion from Nurse Practitioner Christina Kucher and psychotherapist Kandice Witherspoon.  (*Id.* at 17).  Finally, she argues that the ALJ erred in finding Plaintiff able to perform light work, in light of the Paik's and Kucher and Witherspoon's opinions.  (*Id.* at 23).

### A. Claim that the ALJ erred in finding Plaintiff's HIV/AIDS to be "a nonsevere impairment" and that this finding "violated the law of the case" (Pl. Br. at 4)

Plaintiff argues that the ALJ's finding that her HIV/AIDS is a non-severe impairment was in error.  We address her argument that the finding violates the "law of the case" first.  Then we discuss whether the ALJ erred in finding that Plaintiff's HIV/AIDS constitutes a non-severe impairment.

#### 1.   Law of the case doctrine

First Plaintiff argues that finding HIV/AIDS to be non-severe contradicts the first ALJ Judge Janice C. Volkman's finding in the initial decision that Plaintiff's HIV/AIDS was severe.

---

2019 adjudication.  This would make her just shy of the definition of "advanced age" as 55 years old, thus providing for a "non-mechanical" application.

(Pl. Br at 6).  She argues that this "violates the law of the case" doctrine.  (*Id.*).  We do not accept that the doctrine is applicable here where the ALJ's opinion which constituted the final decision of the Commissioner was vacated and the district court did not make a finding on this issue.  (R. 2017).  On remand "the Appeals Council, acting on behalf of the Commissioner, may make a decision, or it may remand the case to an administrative law judge with instructions to take action and issue a decision or return the case to the Appeals Council with a recommended decision."  20 C.F.R. § 416.1483.  The ALJ to whom the case is remanded, in this case Judge Kathleen McDade, then reviews the case without deference to the first ALJ's opinion.  Specifically, the regulation states that "[a]ny issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case."  20 C.F.R. § 416.1483.  While the "law of the case doctrine" may be applicable in the social security context, such is not the case here where the district court vacated the ALJ's decision without any findings on this question.  *See Wiltz v. Comm'r of Soc. Sec. Admin.*, 412 F. Supp. 2d 601, 609 (E.D. Tex. 2005) ("Plaintiff might have an arguable point had *this court* earlier approved the original ALJ's residual lesser functional capacity finding, and ordered a limited remand for an unrelated purpose."); *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("When the Secretary remands cases for re-determination, there is no rule of issue preclusion.").  It is not applicable here. The district court did not make a finding as to whether Plaintiff's HIV/AIDS is a severe impairment, and accordingly it is within the purview of the ALJ to make this finding.[12]  *See Arroyo*

---

[12] On this point, on Report and Recommendation, adopted by the district court, stated that "it is clear that Durst's HIV/AIDS diagnosis was in the symptomatic stages for at least some portions of the relevant time period," and remanded for "further proceedings" in which the ALJ was instructed to "consider Paik's opinion in the context of the treatment records of Durst's HIV/AIDS and of Durst's testimony regarding the symptoms she experienced."  (R. 2032).

*v. Astrue*, 347 F. App'x 802, 804 (3d Cir. 2009) (holding that where the district court did not determine an issue, the law of the case doctrine would not apply).

### 2.  Claim that ALJ erred in finding HIV/AIDS a non-severe impairment

Plaintiff argues that the ALJ erred in concluding "that Ms. Durst's symptomatic HIV/AIDS did not last more than twelve months, and dismissed it as a nonsevere impairment at Step Two based on this mistake."  (Pl. Br. at 13).  She supported this argument by pointing to the record, which she says demonstrates that "despite good adherence to Stribild, her CD4 count remained low throughout 2015. . .  Ms. Paik discontinued Stribild and started Ms. Durst on Tivicay and Truvada on October 28, 2015 (R. 2510). However, Plaintiff's CD4 count continued to be low." (Pl. Br. at 12).  She also pointed to diagnoses of "HIV Symptomatic/AIDS" that were reflected in the record "on April 13, 2015 (R. 2477), April 27, 2015 (R. 2486), June 3, 2015 (R. 2493), June 12, 2015 (R. 2500), October 9, 2015 (R. 2506), October 29, 2015 (R. 2514), November 24, 2015 (R. 2519), January 11, 2016 (R. 2533), April 1, 2016 (R. 2550), and August 5, 2016 (R. 2559)." (Pl. Br. at 13).  Further, Plaintiff linked this impairment to her testimony that "she suffered from fatigue."  (Pl. Br. at 13).

In finding that Plaintiff's HIV/AIDS was a non-severe impairment the ALJ noted that the symptomatic period of this impairment did not fulfill the duration requirement of a severe impairment and further that there were no identified functional limitations for a twelve month or longer period.  The ALJ stated that Durst's "symptomatic HIV/AIDS" continued for a period of eight months.  While Plaintiff has pointed to records that assess her "Symptomatic HIV/AIDS" for a period of greater than twelve months, this did not demonstrate the severity of the impairment. The medical records refer to her "viral load" as "undetectable" from October 2014 through October 2015.  (R. 2463, 2475).  While the ALJ did not go in depth into each record at Step Two, he

provided greater detail in his RFC evaluation.  First, while Plaintiff claims that she was "diagnosed as HIV Symptomatic/AIDS throughout the period she discussed" (Pl. Br. at 13), the ALJ points out that "Ms. Paik is not an acceptable medical source able to render a diagnosis or medical opinion."  (R. 1915).  Further, the ALJ states that "the HIV/AIDS symptomatic impression is consistent with corresponding lab results of record, albeit not for a continuous 12 month period." (R. 1915).

In the severity determination, the ALJ noted the symptoms associated with her HIV/AIDS, explaining, "[t]urning to the 'symptoms,' in addition to low CD4 count, the claimant was diagnosed with bacterial vaginitis, athlete's food, an abnormal pap in the form of human papillomavirus (HPV), latent tuberculosis infection, and pyelonephritis."  (R. 1905).  The ALJ found that "contemporaneous treatment notes did not identify any functional limitations associated with any of the infections identified; certainly none that would be expected to last for a continuous period of not less than 12 months," but rather "these infections were appropriately treated and remitted or resolved."  (R. 1905).  Specifically, as to the HIV/AIDS, the ALJ explained that her "CD4 count rose and her HIV status returned to asymptomatic within 12 months.  Consequently, the claimant's asymptomatic HIV and symptomatic HIV/AIDS (regardless of laboratory findings of CD4 counts and viral loads) cannot be considered severe impairments, as that term is defined in the regulations."  (R. 1905).  Moreover, in addressing limitations the ALJ explained that "[s]he was able to babysit and carry on routine activities of daily living."  (R. 1905).

Although the ALJ found Plaintiff's HIV/AIDS to be a non-severe impairment, Step Two was resolved favorably for Plaintiff.  As the ALJ found a severe impairment and the analysis continued to Step Three, we do not consider that finding to reflect error.  Courts routinely decline requests for remand based upon an assertion that the ALJ did not identify a particular impairment

as "severe" as part of the Step Two discussion where the ALJ otherwise advanced the analysis to Step Three. *See, e.g., Salles v. Commissioner of Social Security*, 229 Fed. Appx. 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff's] favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless."); *Pailin v. Colvin*, 2013 WL 5924972, *2 (E.D. Pa. Nov. 5, 2013) ("where the ALJ found that Plaintiff suffers from even one severe impairment, any failure on the ALJ's part to identify other conditions as severe does not undermine the entire analysis"). The ALJ here found that Durst satisfied Step Two and proceeded on to Step Three. The ALJ then thoroughly discussed Plaintiff's HIV/AIDS in formulating her RFC. The ALJ discussed her CD4 as well as her viral load, pointing to records for dates spanning from 2014 through 2019. (R. 1910–12). While Plaintiff argues in her Reply Brief that based her finding only on Plaintiff's CD4 count, without consideration of her viral load, this is belied by the ALJ's opinion, which specifically discusses the periods during which her viral load was and was not detectable. (R. 1911). We do not find error in the ALJ's Step Two finding. This argument does not provide a basis for remand.

**B. Claim that the ALJ erred in rejecting "the opinion of the treating certified registered nurse practitioner" (Pl. Br. at 14)**

Plaintiff argues that "the ALJ assigned 'little weight' to Ms. Paik's opinion for erroneous reasons." (Pl. Br. at 16). While the ALJ considered Ms. Paik's opinion as an "'other' medical source opinion pursuant to SSR 06-03p," as instructed by this court in ordering remand, Plaintiff argues that the ALJ should have assigned the opinion "significant weight using the factors set forth in 20 C.F.R. § 416.927(d)." Plaintiff explains that there are circumstances where it may be appropriate to give greater weight to an "other" medical source, than an "acceptable medical

source." (Pl. Br. at 16). While it is true that it is permissible to give Ms. Paik's opinion greater weight, it is not mandatory.

The ALJ summarized Grace Paik, CRNP's opinion:

> In October 2014, Grace Paik, CRNP opined that the claimant could frequently lift less than 10lbs and occasionally life 10lbs, stand and walk 3 hours in an 8 hour workday, sit 3 hours in an 8 hour workday, must alternate positions every 30 minutes, must be able to shift positions at will, could occasionally twist, stoop, crouch, climb stairs, and climb ladders, is limited in pushing and pulling, must avoid concentrated exposure to humidity and noise, avoid moderate exposure to temperature extremes, and avoid all exposure to wetness, fumes, odors, dusts, gases, poor ventilation, and hazards. Further that she would likely be absent once month [sic]. Stated reasoning for the limitations in the form included back pain, anemia, AIDS, and chronic Hepatitis C.

(R. 1916).

Contrary to Plaintiff's assertion, the ALJ did consider the factors enumerated in 20 C.F.R. § 416.927. The ALJ noted the "length of treatment," writing that "Ms. Paik treated the claimant at the Lax Center for HIV/AIDS and other conditions from 2014–2016." (R. 1916). The ALJ also acknowledged specialization, noting that "[a]s she is employed as a CRNP at an HIV/AIDS treatment facility, it is assumed she has expertise in that area of medicine." (R. 1916). After acknowledging these factors, the ALJ concluded that "[h]owever, her assessment is not supported or consistent with a rationale based on objective findings from her notes, or notes form other treating sources, that would warrant the degree of limitations she espoused." (R. 1916).

The ALJ explained that she gave the opinion "little weight for several reasons." (R. 1915). Specifically, she stated that "the evidence does not support the stated restrictions" and that her infections "did not result in any functional limitations." (R. 1915). She noted that her "[p]hysical examinations revealed unlabored breathing, no edema, a normal gait, appropriate affect, and a normal heart rate and rhythm." (R. 1915). Further, while certain "[r]ecords from September 2014

reflect complains of fatigue . . . she subsequently routinely denied the same to Ms. Paik for the majority of the alleged period of disability." (R. 1915–16). The ALJ also pointed to records in which she "repeatedly denied fevers, chills, joint pain, joint swelling, and muscular weakness." (R. 1916). She noted the effects of treatment in that her anemia "improved with treatment," and Her Hepatitis C "was asymptomatic" and her "after starting treatment she merely complained of being 'a little tired.'" (R. 1916). On the other hand, she noted lack of treatment for certain of the issues Paik relied on, explaining that "[t]he record contains no sustained treatment for neck, back shoulder, or knee pain." (R. 1916). Based on the thorough explanation from the ALJ we cannot accept that the ALJ's assignment of "little weight" to Paik's opinion was unsupported by substantial evidence.

## C.  Claim that the ALJ erred in rejecting "the opinion of the treating psychotherapist and nurse practitioner regarding the nature and severity of Plaintiff's mental impairments" (Pl. Br. at 17)

Plaintiff argues that the ALJ erred in awarding "little weight" to an opinion by Nurse Practitioner Christina Kucher and psychotherapist Kandice Witherspoon. (Pl. Br. at 17). The ALJ pointed to specific recommendations Kucher and Witherspoon made and indicated contradictions in the record. First, the ALJ noted that while they found that Plaintiff could not "maintain attention for 2-hour segments," "the records show a logical and goal directed thought process, focused concentration, and good memory." (R. 1915). While the opinion "identif[ied] poor sleep and trouble making decisions" the ALJ explained that "the records around that time note stable sleep and good insight and judgments." (R. 1915). The ALJ then explained her rationale for finding the "degree of absences . . . to be an overestimate," explaining that she "generally attended her weekly therapy appointments as scheduled, dependably watched children, and had improved symptoms

14

with treatment." (R. 1915). The ALJ found it "difficult to reconcile [their] finding the claimant unable to complete a workday or week without interruption from psychologically based symptoms given the fact that she did not require any psychiatric hospitalization or repeated emergency interventions." (R. 1915). Finally, the ALJ noted that "the opinion was only rendered 6-7 months after the claimant was free from substances." (R. 1915).

Plaintiff asserts that "[t]he ALJ's reasoning was erroneous." (Pl. Br. at 18). Plaintiff describes three specific reasons for this position. First, Plaintiff points to records from Dr. Julia Curicio-Alexander as well as "other treatment records," claiming that they support the opinion. (Pl. Br. at 18–19). Then she argues that contrary to the ALJ's suggestion "Ms. Durst's ability to attend outpatient treatment, help her sister with child care on an unpaid basis, and avoid hospital treatment does not equate to an ability to handle the stress of a workplace on a 40 hour per week basis, contrary to the ALJ's lay opinion." (Pl. Br. at 21). Finally, Plaintiff disputes the significance of the fact that the opinion "was only rendered 6-7 months after the claimant was free from substances." (Pl. Br. at 21).

### 1. Consistent Treatment Records

Plaintiff argues that the ALJ failed to consider records from psychologist Julia Curcio-Alexander and that "Dr. Curcio Alexander's findings support the opinion of Ms. Kucher and Ms. Witherspoon, but the ALJ overlooked this fact." (Pl. Br. at 18). It is clear from the ALJ's opinion that the ALJ did not "overlook[]" the records from Dr. Curcio-Alexander, as the ALJ dedicated an entire paragraph to discussion of these July through October 2014 records. (R. 1912). Further, the ALJ, in awarding this opinion little weight, stated that "the restrictions are not entirely supported by the corresponding records." (R. 1915). The fact that there were also records that

may have supported the opinion does not negate the examples of inconsistency that the ALJ cited to assessing the weight to give Kucher and Witherspoon's opinion.

Plaintiff also argued that "other treatment records support the assessment of Ms. Kucher and Ms. Witherspoon." (Pl. Br. at 19). She pointed to a "biopsychosocial evaluation" that indicated "depression and poor coping skills," that she lacks "insight" and energy," and that she has "poor anger management skills." (*Id.*). She also cites that her "GAF was assessed at 48," which she says "connotes 'serious symptoms or any serious impairment in social, occupational, or school functioning.'" (*Id.*). We note that the ALJ discussed this July 2014 evaluation, which was conducted based on a referral "to Wedge Medical Center's Drug and Alcohol Programs by her probation officer." (R. 1912). In addition to her "lack [of] energy, anger outbursts, feelings of hopelessness, generalized feelings of anxiety and feelings of shame and guilt," the ALJ noted that this record also indicated that "she reported that with medications, her depression and sleep issues were stabilized," and that "[o]n formal mental status examination, her memory was good, thought process normal and logical, and judgment and insight fair." (R. 1912). The ALJ discussed Plaintiff's Global Assessment Functioning (GAF) scores from 2013 and 2014, noting "scores of 48 and 59 within the record." (R. 1916). The ALJ also gave those scores "little weight, given that "[t]he DSM-V has removed the GAF scoring scale from its diagnostic criteria because of its unreliability" and that "[t]he GAF score was not designed to be used for adjudicative determinations." (R. 1916). The ALJ clearly considered the records that Plaintiff is pointing to. They do not demonstrate that the ALJ's award of "little weight" was erroneous as the ALJ pointed to other records in support of her determination. Plaintiff essentially asks us to re-weigh the evidence. This is not for use to do, as our obligation is only to determine whether the ALJ's decision is supported by substantial evidence. We conclude that it is.

### 2.  "[S]tress of a workplace on a 40 hour per week basis"

Plaintiff argues that "Ms. Durst's ability to attend outpatient treatment, help her sister with childcare on an unpaid basis, and avoid hospital treatment does not equate to an ability to handle the stress of a workplace on a 40 hour per week basis."  (Pl. Br. at 21).  Consideration of the activities that Plaintiff engages in is permissible.  *Hock v. Comm'r Soc. Sec.*, 646 F. App'x 171, 174 (3d Cir. 2016) (Finding treatment notes that Plaintiff "worked at her father's body shop answering and directing calls for approximately ten hours a week and that she regularly babysat her friend's young children . . . were inconsistent with [doctor's] finding that [Plaintiff] had a marked limitation on normal workday and workweek activities).

### 3.  Timing of Opinion

The timing of the opinion is a permissible consideration.  Plaintiff points to an opinion from 2018 from Yandama Bangura, claiming that it corroborates Ms. Kucher and Ms. Witherspoon's opinion.  (Pl. Br. at 21).  Again, Plaintiff is asking us to reweigh the evidence.  It was permissible for the ALJ to take into consideration that the opinion "was only rendered 6-7 months after the Plaintiff was free from substances" where the opinion listed in explanation for categorizing certain skills as fair or poor that she had "recently completed a drug and alcohol program (Sept 2014), and that she was "drug free for 6 months."  (R. 1822).

### D.  Claim that the ALJ erred in finding that Plaintiff was able to "perform light work"

Plaintiff argues that she should have been limited to sedentary work, which would result in a "finding of disability."  (Pl. Br. at 23–24).  She argues that she should have been found disabled based on "the limitations assessed by Ms. Paik, Ms. Kucher and Ms. Witherspoon, as the VE testified that such limitations "would preclude all work."  (Pl. Br. at 24).  As the Plaintiff explains, however, "[t]he ALJ's hypothetical omitted those credibly established limitations."  (*Id.*).

17

As addressed in the previous two claims, the ALJ's decision to award statement "little weight" to Ms. Paik's opinion as well as Ms. Kucher and Ms. Witherspoon's opinion was supported by substantial evidence.  As such, it was not error for the ALJ to fail to propose hypotheticals to the VE with the limitations that she did not credit.

V.      **CONCLUSION**

We see no basis for a remand in this case under Sentence Four of 42 U.S.C. § 405(g).  The ALJ complied with his obligation to evaluate the evidence and explain why he relied on the evidence he did.  While he found Plaintiff's HIV/AIDS a non-severe impairment at Step Two, the ALJ analysis proceeded beyond Step Two.  He explained his award of "little weight" to opinions by Ms. Paik and Ms. Kucher and Ms. Witherspoon based on comparison to the medical records. Finally, he supported his finding that Plaintiff could perform light work, with particular additional limitations.  As such, we will deny Plaintiff's motion.  An appropriate order follows.

BY THE COURT:

David R. Strawbridge, USMJ
DAVID R. STRAWBRIDGE
United States Magistrate Judge